Filing # 221658736 E-Filed 04/23/2025 04:17:26 PM

**IN THE CIRCUIT COURT OF THE 11ᵗʰ JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

STEPHEN WOLTER,                                   CASE NO.:

      Plaintiff,

vs.

WALMART, INC.,

      Defendant.

_____/

## COMPLAINT

Plaintiff, STEPHEN WOLTER, sues Defendant, WALMART, INC., and alleges the following:

### PARTIES, JURISDICTION, AND VENUE

1. This is an action for damages in excess of FIFTY THOUSAND DOLLARS ($50,000.00), exclusive of costs, fees and interest, and is otherwise within the jurisdiction of this Court.

2. At all times material hereto, Plaintiff, STEPHEN WOLTER ("Plaintiff" or "WOLTER") is over the age of eighteen, and is a resident of Wisconsin and/or South Carolina, and is otherwise *sui juris*.

3. At all times material hereto, Defendant, WALMART, INC. ("Defendant" or "WALMART"), is a foreign corporation, registered and authorized to do business in Miami-Dade County, Florida.

4. Venue is proper in this Court because the incident that forms the litigation occurred in Miami-Dade County, Florida.

**EXHIBIT**

**1**

5.     The Defendant is subject to the jurisdiction of this Court because the product at issue was purchased from a WALMART retail store located in Miami-Dade County.

6.     The Defendant is subject to the jurisdiction of this Court by virtue of its designing, assembling, manufacturing, distributing and/or shipping into the State of Florida, and selling to Plaintiff in the State of Florida, a defective product which caused an injury to Plaintiff.

## GENERAL ALLEGATIONS

7.     At all times material hereto, and at the time of the incident complained of, WALMART, was in the business of designing, manufacturing, assembling, distributing, promoting, packaging, selling, and/or placing certain products into the stream of commerce under its brand name Ozark Trail®.

8.     At all times material hereto, and at the time of the incident complained of, WALMART, or others acting on its behalf, designed, manufactured, assembled, distributed, promoted, packaged, sold and/or placed into the stream of commerce a butane stove which it sold at one or more of its retail stores, more specifically described as the Ozark Trail 1-Burner Table Top Stove ("The Stove").

9.     The Stove was designed and manufactured by, for, with the approval and authorization of, or at the direction of WALMART.

10.     On or about March 28, 2024, Plaintiff purchased The Stove from a Walmart Supercenter retail store located at or about 8651 NW 13th Terrace, Doral, FL 33126 (Store No. 2091).

11.     On or about March 29, 2024, shortly after purchasing The Stove, Plaintiff attempted to use the Stove for the first time out of the box while occupying his Sprinter van that was parked in the Walmart Super Center parking lot.

2

12.     On or about March 29, 2024, while using The Stove as directed and intended to be used, The Stove caught fire and/or the butane canister exploded or emitted a fire ball of flames that caused severe, life-threatening, forever injuries and burns to Plaintiff's body.

13.     More specifically, The Stove was designed, manufactured, packaged, and delivered to Plaintiff out of the box with the grill plate upside down. However, as designed and manufactured and despite inadequate warning, instruction or notice, the grill plate must be in the upright position to safely use The Stove.

14.     The picture below depicts the configuration of The Stove as it was designed, manufactured, packaged, and delivered to Plaintiff:



15.     There are no instructions, warnings, notices, bright colors or other alerts on the Stove to warn or alert the user to flip the grill plate over prior to use and/or that failure to flip the grill plate over could result in an explosion causing serious injury.

16.     Operating The Stove with the grill plate in the upside-down position, as it is configured and provided to the user out of the box, causes heat to build up inside of the Stove which can and does cause the butane canister to heat up, expand, and eventually release, resulting in a large fire ball explosion.

17.     WALMART knew or should have known that users would operate The Stove as manufactured, packaged, configured, and provided to the user out of the box, without flipping the grill plate over prior to use, but failed it to take reasonable steps to design or manufacture The Stove to prevent this foreseeable use of the product, failed to provide adequate  warnings or instructions to flip the grill plate over prior to use, failed to make reasonable and adequate safeguards to prevent buildup of heat that it is likely to cause a foreseeable explosion or fire with the normal use of the Stove.

**COUNT I: STRICT LIABILITY AGAINST WALMART**

18.     Plaintiff readopts and realleges paragraphs 1-17 as though fully set forth herein.

19.     This is an action for strict liability against WALMART.

20.     The Stove, as hereinabove described, was defective and unreasonably dangerous for the uses for which it was manufactured, at the time it was designed, manufactured, assembled, sold, distributed, marketed, packaged, promoted, and placed within the stream of commerce and market place, by Defendant, and/or allowed to be used therein by Defendant, in that The Stove contained certain defects in design and/or manufacture and/or assembly and/or warning, more specifically described herein.

21.     At all times material hereto, WALMART, was in the business of manufacturing and selling The Stove.

4

22. At all times material hereto, WALMART was the importer, distributor and/or seller in the chain of distribution for The Stove.

23. At all times material hereto, The Stove was not reasonably fit for the use intended or reasonably foreseeable by Defendant, WALMART.

24. At all times material hereto, The Stove was in a condition unreasonably dangerous to the Plaintiff and The Stove was expected to and did reach the Plaintiff without substantial or unexpected change affecting its condition.

25. At all times material hereto, The Stove was in a condition unreasonably dangerous to the Plaintiff in that it failed to perform as safely as an ordinary customer would expect when used as intended or in a manner reasonably foreseeable by the Defendant, and the risk of danger to the Plaintiff and other foreseeable persons outweighed the benefits, because The Stove caused an explosion when used as provided by and packaged by Defendant.

26. The Stove was designed, manufactured and assembled using an unsafe plan or design and materials, components, metals, plastics, and other parts, which would cause said device to fail to provide the intended and expected protection with normal, foreseeable, and anticipated use.

27 The Stove was in a condition unreasonably dangerous to Plaintiff in that the Stove was likely to, and did, cause an explosion.

28. The Stove was in a condition unreasonably dangerous to Plaintiff in that the Stove was likely to, and did, fail at preventing butane to flow when the grill plate was not in the correct position.

29. The Stove was in a condition unreasonably dangerous to Plaintiff in that it was likely to, and did, cause injuries with normal, foreseeable, and anticipated use.

30. The Stove was in a condition unreasonably dangerous to the Plaintiff in that it was likely to, and did, exacerbate injuries during normal, foreseeable, and anticipated use.

31. The Stove was further defective because the foreseeable risks of harm from the product could have been reduced or avoided by providing reasonable instructions and/or warnings, and the failure to provide those instructions or warnings makes the product unreasonably dangerous.

32. The said defects, which were existing at the time of the design, manufacture, and assembly of said device, continued to remain an integral characteristic of said product at the time it was sold, distributed, placed within the stream of commerce and market place, and allowed to be used therein by WALMART, and remained as such up to and including the time that the Plaintiff was injured while using said device, and, as such, the Defendant is strictly liable to Plaintiff.

33. The Plaintiff was unaware of the aforesaid defects and dangerousness of said product, as hereinabove alleged, which made such product unsafe for its intended and foreseeable use; nor were such defects apparent upon reasonable inspection.

34. On or about March 28, 2024, Plaintiff, WOLTER, while using the aforesaid device was seriously, severely and permanently injured when said device failed or otherwise malfunctioned, causing injury to the Plaintiff, and which injuries resulted as a direct and proximate result of the defects in said device, as herein alleged.

35. That as a direct and proximate result of the defects in said device, Plaintiff, WOLTER, suffered serious and severe injuries, or, in the alternative, the injuries aforesaid thereby caused or contributed to cause an aggravation of a previous existing defect or infirmity and as a direct result thereof the Plaintiff suffered great pain and anguish of body and mind, and

loss of capacity for the enjoyment of life, all of which conditions are continuing and permanent in nature.

36.     That as a further direct and proximate result of the defects in said device, Plaintiff, WOLTER, had extensive medical care and treatment and incurred medical bills and expenses attendant to the injuries.

**WHREFORE**, Plaintiff, WOLTER, demands judgment against Defendant WALMART, together with interest and costs which are prayed for in addition thereto.

<u>**COUNT II: NEGLIGENCE AGAINST WALMART**</u>

37.     Plaintiff readopts and realleges paragraphs 1-17 as though fully set forth herein.

38.     At all times material hereto, Defendant, WALMART owed a duty to use reasonable and ordinary care in the design, manufacture, assembly, distribution, warning, instructing and/or sale of the Stove, and in placing such Stove into the stream of commerce, so that the Stove would be reasonably safe for its intended use and for other foreseeable uses.

39.     Defendant, WALMART, designed, manufactured, assembled, distributed, sold, placed with the stream of commerce and market place, and/or allowed to be used therein, said Stove, and each and every component of said Stove, as herein specifically described, which failed to perform safely as intended or expected for Plaintiff within the normal and/or foreseeable use of the Stove resulting in a condition unreasonably dangerous to Plaintiff in that the Stove was likely to, and did, cause an explosion or fire to be discharged during its use, when Defendant, knew, or with the exercise of reasonable care, should have known that the Stove was negligently designed, manufactured, assembled, packaged, and/or repackaged.

40.     In addition to the allegations contained in the preceding paragraph, or as an alternative to those allegations, Defendant, WALMART, negligently failed to give proper

instructions and/or warnings to any purchaser or user of The Stove, concerning its dangerous condition propensities, or the fact that The Stove, was defective as designed, manufactured, and/or in its instructions and warnings, and, as such, could cause injury to users or those persons in close proximity thereto, and Plaintiff was in the foreseeable zone of risk with respect to such negligence.

41. Defendant, WALMART, knew or should have known, of the negligent design, manufacture, assembly, and instructions for use of The Stove, and knew or should have known, of its dangerous characteristics and nature, or, alternatively, if it failed to know that The Stove was dangerous, this failure on the part of WALMART was negligence.

42. Defendant, WALMART, negligently designed, manufactured, assembled, marketed, sold, and/or allowed to be sold in the marketplace, for the Stove, and each and every component of said Stove, without warning as to its dangers as to its proper use, and that said Stove, when used within the purpose for which it was designed, manufactured, and intended, was unreasonably dangerous to those persons who used the Stove or were in close proximity thereto.

43. Defendant, WALMART, negligently failed to warn the consumer, user, and operator, of The Stove, of its unsafe and dangerous characteristics, propensities, and defects, and, after placing said product on the market and allowing its use therein, Defendant failed to recall The Stove from the market, consumer, operator, and user thereof, said recall being necessitated because of the unreasonably dangerous and hazardous defects contained therein.

44. Defendant, WALMART, was negligent in the manners and ways aforesaid by designing, manufacturing, assembling, selling, promoting, placing into the stream of commerce and market place, and/or allowing to be used therein The Stove, as previously specified, which product was defective and unreasonably dangerous in its design, manufacture, and/or assembly

8

in that WALMART and its agents or others acting on its behalf, negligently designed, manufactured and/or assembled the Stove, so that it was dangerous or would malfunction in reasonably foreseeable circumstances.

45. On or about the March 28, 2024, Plaintiff, WOLTER, while using the aforesaid device was seriously, severely and permanently injured when said device failed or otherwise malfunctioned, causing injury to the Plaintiff, and which injuries resulted as a direct and proximate result of the defects in said device, as herein alleged.

46. That as a direct and proximate result of the defects in said device, Plaintiff, WOLTER, suffered serious and severe injuries, or, in the alternative, the injuries aforesaid thereby caused or contributed to cause an aggravation of a previous existing defect or infirmity and as a direct result thereof the Plaintiff suffered great pain and anguish of body and mind, and loss of capacity for the enjoyment of life, all of which conditions are continuing and permanent in nature.

47. That as a further direct and proximate result of the defects in said device, Plaintiff, WOLTER, had extensive medical care and treatment and incurred medical bills and expenses attendant to the injuries.

**WHREFORE**, Plaintiff, WOLTER, demands judgment against Defendant WALMART, together with interest and costs which are prayed for in addition thereto.

### <u>DEMAND FOR JURY TRIAL</u>

The Plaintiff, WOLTER, in the above-styled cause hereby demand a trial by jury of all of the issues triable by right.

Dated: April 23, 2025                                        Respectfully submitted,

                                                            */s/Michael J. Pascucci*

9

Michael J. Pascucci, Esq.
Fla. Bar No.: 0083397
Joshua H. Eggnatz, Esq.
Fla. Bar No.: 0067926
**EGGNATZ | PASCUCCI**
7450 Griffin Rd, Ste. 230
Davie, FL 33314
Tel: (954) 889-3359
Fax: (954) 889-5913
Mpascucci@JusticeEarned.com
JEggnatz@JusticeEarned.com

10